FILED
CLERK
4:17 pm, May 01, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
LILY MARIA BURTON,

                Plaintiff,

      -against-

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security,

                Defendant.
----------------------------------------------------------X

**MEMORANDUM OF DECISION & ORDER**
2:14-cv-07525 (ADS)

**APPEARANCES:**

**Law Office Charles E. Binder and Harry J. Binder**
*Attorneys for the Plaintiff*
485 Madison Ave. Suite 501
New York, NY 10022
    By:    Charles E. Binder, Esq., Of Counsel.

**United States Attorney's Office**
*Attorneys for the Defendant*
610 Federal Plaza
Central Islip, NY 11722
    By:    Robert W. Schumacher, II, Assistant United States Attorney, Of Counsel.

**SPATT, District Judge**:

On December 29, 2014, plaintiff Lily M. Burton (the "Plaintiff" or "Burton") commenced this appeal pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), challenging a final determination by the defendant Nancy A. Berryhill, the Acting Commissioner of the Social Security Administration (the "Defendant" or the "Commissioner"), that she is ineligible to receive either disability insurance benefits or supplemental security income.

The Court notes that the Plaintiff originally named Carolyn W. Colvin as the Defendant in this action, but by operation of law, the present Acting Commissioner, Nancy A. Berryhill is

1

"automatically substituted as a party." FED. R. CIV. P. 25(d); see also 45 U.S.C. §405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Presently before the Court are the parties' cross motions, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(c) for a judgment on the pleadings. For the reasons that follow, the Court denies the Plaintiff's motion and grants the Commissioner's motion.

## I. BACKGROUND

The Plaintiff is a 52-year-old woman with one year of college education and past relevant work as a customer service representative and a clerical worker.

On April 23 and May 23, 2012, the Plaintiff filed claims for disability insurance benefits and supplemental security income, respectively. The Plaintiff alleged that she became unable to work on April 1, 2009 due to lupus, soft tissue injuries of the arm, IBS, lumbar spine impairment, back pain, brittle diabetes, a cervical spine impairment, and fluid around the heart. These applications were denied and Plaintiff requested a hearing before an administrative law judge

On June 6, 2013, the Plaintiff appeared with counsel and testified at a hearing before administrative law judge Bruce MacDougall (the "ALJ").

On July 10, 2013, the ALJ issued a decision, finding that the Plaintiff was not disabled under the Act. The Plaintiff requested review of the ALJ's decision, which was denied by the Appeals Council on October 31, 2014, making the ALJ's decision the final decision of the Commissioner.

On December 29, 2014, the Plaintiff filed the instant action. The parties submitted this matter to the Court as fully briefed on April 17, 2018.

For purposes of these motions, familiarity with the underlying administrative record is presumed. The Court's discussion of the evidence will be limited to the specific challenges and responses presently raised by the Plaintiff and the Defendant. In this regard, references to the record are denoted as "R."

## II. DISCUSSION

A. THE STANDARD FOR BENEFITS UNDER THE ACT.

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person may only be disabled if his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In determining whether a person is disabled, the Commissioner is required to apply the five-step sequential process promulgated by the Social Security Administration, set forth in 20 C.F.R. § 404.1520. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). The Plaintiff bears the burden of proving the first four steps, but then the burden shifts to the Commissioner at the fifth step to prove that the Plaintiff is capable of working. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008); *Rosa*, 168 F.3d at 77; *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) ("If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working."). "If at any step a finding of disability or non-

disability can be made, the [Social Security Administration] will not review the claim further."

*Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 379, 157 L.Ed. 2d 333 (2003).

Under the five-step sequential evaluation process, the decision-maker decides:

(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); 20 C.F.R. §§ 404.1520, 416.920. When conducting this analysis, the ALJ must consider the objective medical facts; the diagnoses or medical opinions based on these facts; the subjective evidence of pain and disability; as well as the plaintiff's age, background, education and work experience. *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

**B. THE STANDARD OF REVIEW.**

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 2d 475, 478 (E.D.N.Y. 1998) (Spatt, J.) (citing *Bubnis v. Apfel*, 150 F.3d 177, 179–81 (2d Cir. 1998)); *accord Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); 42 U.S.C. § 504(g); *see also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). The ALJ is required to set forth those crucial factors used to justify his or her findings with sufficient particularity to allow the district court to make a determination

regarding the existence of substantial evidence. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

Accordingly, "the reviewing court does not decide the case de novo." *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010) (citing *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004)). Rather, "the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive," *id.* (citing 42 U.S.C. § 405(g)), and therefore, the relevant question is not "whether there is substantial evidence supporting the [plaintiff's] view"; instead, the Court "must decide whether substantial evidence supports *the ALJ's decision*." *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original). In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings "'only if a reasonable factfinder would have to conclude otherwise.'" *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)). This deferential standard applies not only to factual determinations, but also to "inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-cv-502, 2002 WL 31487903, at *7 (S.D.N.Y. Oct. 29, 2002) (*citing Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

"Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Burgess v. Astrue*, 537 F.3d 117, 127–28 (2d Cir. 2008) (quoting *Halloran*, 362 F.3d at 31); *accord Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed. 2d 842 (1971); *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which

detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S. Ct. 456, 464, 95 L.Ed. 456 (1951)).

An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (per curiam) (quoting *Mongeur*, 722 F.2d at 1040). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 2d 337, 340 (E.D.N.Y. 2004) (*citing DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998)).

The Court is prohibited from substituting its own judgment for that of the Commissioner, even if it might understandably have reached a different result upon a de novo review. *See Koffsky*, 26 F. Supp. at 478 (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)); *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**C. APPLICATION TO THE FACTS OF THIS CASE.**

The ALJ found that the Plaintiff had severe impairments of irritable bowel syndrome, diabetes, neck and back disorders, lupus, and obesity, but that she retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.497(b) with the limitations of occasional postural activities and frequent bilateral fingering. Based on this RFC, the ALJ concluded the Plaintiff was able to perform her past work as a customer service representative and a clerical worker. The Plaintiff contends that the ALJ erred in fashioning her RFC by failing to properly (1) weigh the medical evidence introduced at the proceeding and (2) assess the credibility of her testimony.

**1. As to Whether the ALJ Violated the Treating Physician Rule.**

The regulations define RFC as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404 Subpt. P App. 2, § 200.00(c); see also 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.967; *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (defining RFC as the "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis" (quoting SSR 96–8p)). This determination requires consideration of "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting 20 C.F.R. § 404.1545(a)). It takes into account "all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and Plaintiff's subjective evidence of symptoms." *Stanton v. Astrue*, No. 07-cv-0803, 2009 WL 1940539, at *9 (N.D.N.Y. July 6, 2009) (citing 20 C.F.R. § 404.1545).

Under the fourth step of the sequential evaluation process, the ALJ reviews the RFC and compares it to the demands of her past relevant work. See 20 C.F.R. § 404.1520(f). If the Plaintiff is still able to perform the type of activities required by her past employment, she is deemed not to be disabled. *See* 20 C.F.R. § 404.1520(e). In fashioning the claimant's RFC, the treating physician rule requires the ALJ to give the opinion of a claimant's treating physician as to the nature and severity of the claimant's impairments "'controlling weight,'" so long as it is "'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2)); *Bonneau v. Astrue*, No. 5:13-cv-26, 2014 WL 31301, at *5 (D. Vt. Jan. 3, 2014) (same). Although the Court is generally required to defer to

the medical opinion of a treating physician, *see Schisler v. Sullivan*, 3 F.3d 563, 567-68 (2d Cir. 1993), those findings may not be accorded controlling weight if they are inconsistent with other substantial evidence, including the opinions of other medical experts. *Burgess*, 537 F.3d at 128.

The ALJ must consider the following factors if it decides to afford less than controlling weight to a treating physician's opinion: "(1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *Halloran*, 362 F.3d at 32 (same); 20 C.F.R. § 404.1527(c)(2). The ALJ further must explain the weight assigned to the opinion of a treating physician. Failure to provide "good reasons" for not assigning the proper weight of a treating physician is grounds for remand. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *see also Halloran*, 362 F.3d at 32 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

In order for the Court to determine whether a treating physician's opinion is consistent with other substantial evidence in the administrative record, the Court must keep in mind that "genuine conflicts in the medical evidence are for the ALJ to resolve." *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (quoting *Burgess*, 537 F.3d at 128); *see also Garcia v. Barnhart*, No. 01-cv-8300, 2003 WL 68040, at *7 (S.D.N.Y. Jan. 7, 2003) (holding that the ALJ cannot substitute his or her "own assessment of the relative merits of the objective evidence and subjective complaints for that of a treating physician").

Relevant here, the ALJ gave "some weight in part and little weight in part" to the Plaintiff's treating physician, A. Joseph Pisciotto, D.O., ("Dr. Pisciotto"), and her treating rheumatologist, Sari D. Edelman, D.O. ("Dr. Edelman"). In contrast, the ALJ gave "greater weight" to the consultative examiner, Ammaji Manyam, M.D. ("Dr. Manyam"). The Court concurs with the ALJ.

      *a.*      *As to Dr. Pisciotto's Opinion.*

Dr. Pisciotto stated that the Plaintiff has systemic lupus erythematous, diabetes mellitus, disc disease of the lumbar spine and lumbar radiculopathy. He cited the Plaintiff's chronic pain, fatigue, positive ANA, and generalized joint and muscle pain. Based on these assessments, he opined that the Plaintiff could sit two hours in an eight-hour work day; stand and walk one hour in an eight-hour work day; lift and carry five pounds; is moderately limited in her ability to grasp, turn and twist objects; and is incapable of even low stress. The ALJ gave "Dr. Pisciotto's opinion some weight in part and little weight in part as it [was] not supported by the objective diagnostic evidence . . . , and not supported by his own treatment reports." R. at 16. The Plaintiff objects that the ALJ's finding was conclusory and contradicted by the record. The Court disagrees.

Starting with the diagnostic evidence, the ALJ did not summarily conclude that Dr. Pisciotto's opinion was unsupported by the record, but rather walked through the objective evidence undermining Dr. Pisciotto's assessment of the Plaintiff's functional limitations:

> A June 16, 2010 MRI of the lumbar spine showed normal alignment, early L5-Sl disc degeneration, right L3-4 foraminal disc protrusion with effacement of the right L3 root and no other significant abnormality noted (Exhibit 23F). A November 25, 2012 MRI of the cervical spine showed only a C6/7 disc bulge and cervical spine straightening (Exhibit 25F). A September 7, 2012 thyroid ultrasound was essentially normal. A December 29, 2010 chest x-ray showed no evidence of active cardiopulmonary disease and a September 7, 2012 chest x-ray was normal (Exhibit 35F). An August 10, 2011 echocardiogram was normal (Exhibit 24F). August 17, 2012 x-rays of both knees showed moderate bilateral osteoarthritis (Exhibit 35F). An August 5, 2010 venous ultrasound of the lower extremities showed no evidence of femoral-popliteal deep vein thrombosis in either lower extremity (Exhibit 35F).

9

> A May 14, 2013 abdominal sonogram indicated hepatomegaly and status post cholecystectomy but otherwise was a normal abdominal sonogram, (Exhibit 34F).

R. at 16. As stated above, the ALJ may discount the weight given to a treating source's opinion when it is inconsistent with other medical evidence in the record. *See Netter v. Astrue*, 272 Fed.Appx. 54, 56 (2d Cir.2008) ("Where, as here, a treating specialist and state-employed physicians are in agreement that an individual is not disabled, and where this conclusion is supported by record evidence, the Commissioner may reject the contrary opinion of one treating physician."); *Losquadro v. Astrue*, No. 11-cv-1798, 2012 WL 4342069, at *10 (E.D.N.Y. Sept. 21, 2012) (finding treating source not entitled to controlling weight because "the ALJ described the lack of clinical and diagnostic techniques to support their opinions of complete disability and further highlighted other medical evidence that was inconsistent with their assessments"). To the extent that the Plaintiff disagrees with the ALJ's assessment of that evidence due to its conflict with other medical evidence, the Court reminds the Plaintiff that "genuine conflicts in the medical evidence are for the Commissioner to resolve," not the Court. *Veino v. Barnhart*, 312 F. 3d 578, 588 (2d Cir. 2002).

As for Dr. Pisciotto's treatment reports, the ALJ explained that Dr. Pisciotto only saw the Plaintiff for general check-ups and complaints, such as colds and coughs, and his notes contained no reported findings substantiating the functional limitations about which he testified. The ALJ may afford less than controlling weight to the opinion of a treating source when there is insufficient medical evidence supporting that opinion. *See McGill v. Berryhill*, No. 16-cv-4970, 2018 WL 1368047, at *10 (E.D.N.Y. Mar. 16, 2018) ("When an opinion is unsupported, the ALJ is not required to afford deference to that opinion and may use his discretion in weighing medical evidence as a whole." (citing *Halloran*, 362 F.3d at 32). The Plaintiff contends that Dr. Pisciotto based his opinions on clinical evidence of chronic pain and fatigue, as well as diagnostic blood

work showing positive antinuclear antibodies, an A1C level of 8.6, and elevated blood sugar levels. However, Dr. Pisciotto drew no specific connection between those findings and the severe limitations to which he opined, namely, that the Plaintiff could sit for two hours, stand/walk for one hour in an eight-hour workday, occasionally lift/carry up to five pounds, and had limitations in reaching, handling, fingering, and lifting.

Therefore, the Court finds that the ALJ assigned the proper weight to Dr. Pisciotto's opinion.

      *b. As to Dr. Dr. Edelman's Opinion.*

Dr. Edelman, the Plaintiff's rheumatologist, opined that the Plaintiff could sit four hours in an eight-hour work day; stand and walk two hours in an eight-hour work day; lift and carry twenty pounds occasionally; and could handle low stress work. The ALJ gave "her opinion some weight in part and little weight in part." R. at 16. The ALJ explained that Dr. Edelman initially noted the Plaintiff had photosensitivity, dry eye, poly arthritis, lopecia, fatigue, and arthralgia in the hands, shoulders and wrists, but that her subsequent reports lacked findings supporting the limited functional assessment of the Plaintiff that she described. The Plaintiff makes the same objections about the ALJ's findings regarding Dr. Edelman as she did for Dr. Pisciotto. They fail for the reasons discussed above.

Paying specific attention to Dr. Edelman's treatment notes, the Plaintiff claims that they establish that she fulfilled the diagnostic criteria for systemic lupus erythematosus identified by the American College of Rheumatology. That conclusion, however, does not support the overly severe limitations ascribed to the Plaintiff by Dr. Edelman, especially in light of the remainder of Dr. Edelman's treatment notes, which revealed: unremarkable physical examinations; that the Plaintiff had been non-compliant with treatment; and that the Plaintiff had gone for physical

11

therapy and realized improvement in her symptoms until an exacerbation in back pain from lifting her niece. As a result, the Court concurs with the ALJ that the record lacked sufficient medical evidence to justify affording controlling weight to Dr. Edelman's opinion.

Accordingly, the Court finds that the ALJ assigned the proper weight to Dr. Edelman's opinion.

   c. *As to Dr. Manyam's Opinion.*

Consultative examiner Dr. Manyam examined the Plaintiff on June 19, 2012 and diagnosed her with lupus, diabetes mellitus type II, childhood asthma - mild, nonspecific headaches and multiple joint pain, including both hands and fingers due to lupus, without sign of inflammation well controlled on medication. He opined the Plaintiff had mild limitations to bending, squatting, climbing stairs, pushing, pulling, lifting and carrying weight, and also a mild limitation of fine repetitive movements of both hands. The ALJ gave "greater weight to the opinion of Dr. Manyan as it [was] based on a complete thorough evaluation of the claimant and is consistent with his own findings on examination and with the other objective and clinical findings of record." R. at 17. The Plaintiff raises three equally unavailing objections to the ALJ's determination.

First, the Plaintiff contends that Dr. Manyam's opinion should have received less weight simply because he was a one-time consultative examiner, as opposed to a treating source. Although the Plaintiff is correct that "ALJs should not rely heavily on the findings of consultative physicians after a single examination," *Selian*, 708 F.3d at 419, there is no *per se* rule requiring the ALJ to inexorably defer to the opinions of treating sources over those of consultative examiners under all circumstances. In situations like here, where the opinions of treating sources are unsupported by the record and contradicted by diagnostic evidence, it is entirely proper to elevate a consultative examiner's opinion over the flawed opinions of treating sources. *See Diaz v. Shalala*, 59 F.3d 307,

313 n.5 (2d Cir. 1995) ("[T]he opinions of nonexamining sources [can] override treating source's opinions provided they are supported by evidence in the record."); *Donaldson v. Berryhill*, No. 2:17-cv-2000, 2018 WL 4845740, at *8 (E.D.N.Y. Oct. 4, 2018) (Spatt, J.) ("If the consultative examiner's opinion is more consistent with the medical evidence than a treating physician's opinion, the ALJ may accord the consultative examiner's opinion greater weight.").

Second, the Plaintiff claims there is no evidence that the Commissioner provided Dr. Manyam with any of her medical records, diagnostic, imaging or lab testing. However, Dr. Manyam's report explicitly references the MRIs of the Plaintiff, as well as other salient aspects of her medical history, and the Plaintiff points to no clinical findings (other than the broad-level assessment of impairments) contradicted by other medical evidence. To the contrary, Dr. Manyam's opinion aligned with the diagnostic testing detailed in the ALJ's opinion. As a result, Dr. Manyam's opinion is distinct from that of the consultative examiner in *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008), who stated there was "no objective reason" why the claimant could not sit, stand, and walk for six hours out of an eight-hour workday, despite the presence of a contradictory MRI report in the administrative record. *Id.* at 130–31.

Third, the Plaintiff objects that Dr. Manyam's opinion that the Plaintiff had "mild" limitations in certain activities was too vague to make an appropriate determination on her exertional capacity, such as how long she could sit, stand, and walk. But the "mere use of the phrase 'moderate limitations' does not render [a doctor's] opinion vague or non-substantial for purposes of the ALJ's RFC determination." *Mancuso v. Colvin*, No. 12-cv-6425, 2013 WL 3324006, at *4 (W.D.N.Y. July 1, 2013). Unlike *Curry v. Apfel*, 209 F.3d 117 (2d Cir. 2000), where the consultative examiner used the terms "moderate" and "mild" without "additional information," *id.* at 123, Dr. Manyam made specific findings articulating the Plaintiff's exertional

abilities, *see* R. at 331–32. For instance, Dr. Manyam observed that the Plaintiff had a normal gait but that she walked on heels and toes with some difficulty because she complained of pain in her ankle joints. The ALJ thus considered much more information than what was presented in *Curry*, curing any harm caused by the vagueness of Dr. Manyam's ultimate conclusion. *See Martinez v. Comm'r of Soc. Sec.*, No. 15-cv-3649, 2017 WL 1155778, at *16 n.23 (E.D.N.Y. Mar. 27, 2017) ("Dr. Thukral's report goes far beyond the doctor's description of 'moderate' limitations; it provides . . . additional information . . . [t]hat information sheds considerable light on the [phrase's]"); *Tudor v. Comm'r of Soc. Sec.*, No. 12-cv-2795, 2013 WL 4500754, at *12 (E.D.N.Y. Aug. 21, 2013) ("Since Dr. Skeene's opinion[, which described 'moderate limitations'] was supported by 'additional information,' *i.e.*, objective medical findings, her opinion is not vague and provided an adequate basis for the ALJ to infer that plaintiff is capable of performing the exertional requirements of sedentary work.").

The Court also notes that Dr. Manyam's report was not the sole basis for the ALJ's opinion. Rather, the ALJ assigned "greater weight" to the opinion of Dr. Manyam than the opinions of Drs. Pisciotto and Edelman. Based on his consideration of "all the evidence together," R. at 17, including the objective diagnostic evidence, the ALJ found that the Plaintiff failed to carry her burden of proving that she cannot perform her past relevant work. *See Poupore*, 566 F.3d at 306; *Reynolds v. Colvin*, 570 Fed.App'x. 45 (2d Cir. 2014). The ALJ's RFC determination then would still stand even if the Court found that he should have afforded less weight to Dr. Manyam's report.

Therefore, the Court finds that the ALJ assigned the proper weight to Dr. Manyam's opinion.

**2. As to Whether the ALJ Properly Evaluated the Plaintiff's Credibility.**

The Plaintiff argues that the ALJ failed to properly evaluate her credibility. The Court disagrees. To evaluate a claimant's credibility:

> [t]he regulations set forth a two-step process to evaluate a claimant's testimony regarding his symptoms. First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility. Such an evaluation of a claimant's credibility is entitled to great deference if it is supported by substantial evidence. In assessing the claimant's credibility, the ALJ must consider all of the evidence in the record and give specific reasons for the weight accorded to the claimant's testimony. The regulations require the ALJ to consider not only the objective medical evidence, but also:
>
> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms ...; and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205–06 (W.D.N.Y. 2005) (quoting *Murphy v. Barnhart*, No. 00-cv-9621, 2003 WL 470572, at *10–11 (S.D.N.Y. Jan. 21, 2003) (citing 20 C.F.R. § 404.1529(c))); *see also Wright v. Astrue*, No. 06-cv-6014, 2008 WL 620733, at *3 (E.D.N.Y. Mar. 5, 2008) (listing the same seven factors); *Knapp v. Apfel*, 11 F. Supp. 2d 235, 238 (N.D.N.Y. 1998)

("[A] finding that the Commissioner has failed to specify the basis for his conclusions is [a] compelling cause for remand.").

Here, the Plaintiff testified that she has lupus with leg swelling, headaches, dry mouth, joint pain, and back pain. She stated she cannot pick up or grasp objects because of joint pain in her hands and it is hard to bend, sit and lift because of back, knee, hip and ankle pain. The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible.

First, the Plaintiff objects that the ALJ failed to adequately explain his decision. The Plaintiff correctly observes that the ALJ's opinion "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Tornatore v. Barnhart*, No. 05-cv-6858, 2006 WL 3714649, at *6 (S.D.N.Y. Dec. 12, 2006) (citing SSR 96-7p). However, it is also true that the ALJ need not robotically walk through its assessment of the factors relevant to determining a claimant's credibility on a factor-by-factor basis. *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (ALJ's failure to discuss factors not relevant to his credibility determination did not require remand as the ALJ provided specific reasons for his credibility determination and the court could "glean the rationale" of the ALJ's decision from the record).

As the ALJ noted, the Plaintiff's testimony stood in contrast with much of the objective medical evidence, which showed that she was neurologically intact and had good range of motion of the lower extremities; no muscle atrophy; good strength, reflexes, and sensation throughout; normal respiratory, musculoskeletal, and cardiovascular examinations; full range of motion of the

16

upper extremities, nontender and stable joints; no sensory deficits; a negative straight leg raising test bilaterally; and no significant structural or ischemic heart disease. While the ALJ may not have specifically related the objective evidence to the Plaintiff's credibility, it is apparent that it formed the basis of the ALJ's decision in this regard, so that the Court finds the ALJ "'explain[ed] that decision with sufficient specificity to permit a reviewing court to decide whether there [were] legitimate reasons for the ALJ's disbelief[.]'" *Owens v. Berryhill*, No. 17-cv-2632, 2018 WL 1865917, at *9 (E.D.N.Y. Apr. 18, 2018) (Spatt, J.) (quoting *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 435 (S.D.N.Y. 2010))

Second, the Plaintiff contends that the ALJ impermissibly discounted the Plaintiff's credibility solely on the basis of the objective medical evidence. Although the ALJ may not reject a claimant's statements about the intensity and persistence of pain entirely because it is unsubstantiated by the available objective medical evidence, the objective medical evidence is still relevant. *See* 20 C.F.R. §§ 404.1529(c)(2) ("Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work."), 416.929(c)(2) (same).

The ALJ, in part, discounted the Plaintiff's description of the intensity, persistence and limiting effects of her symptoms due to the medical evidence in the record, but also, in part, because of other permissible considerations. The ALJ considered Plaintiff's activities of daily living and her ability to clean, wash clothes, and cook. Further, the ALJ noted that medication and treatment afforded the Plaintiff relief from pain, but that the Plaintiff failed to comply with the recommendations of her treating physicians. His analysis thus comported with the regulations. *See Campbell v. Astrue*, 465 F. App'x 4, 7 (2d Cir. 2012) (finding plaintiff's description of his

17

symptoms lacked credibility when they often occurred due to his failure to take his medication); *Mejia v. Barnhart*, 261 F. Supp. 2d 142, 146 (E.D.N.Y. 2003) ("The ALJ properly considered evidence in the record that plaintiff's pain was adequately controlled by medication. He also properly considered evidence of plaintiff's ability to engage in daily activities such as twice daily preparing her own meals, regular church attendance, and independent travel to and from medical appointments by public transportation."); *Connard v. Barnhart*, No. 99-cv-8006, 2002 WL 1821640, at *6 (E.D.N.Y. Aug. 8, 2002) ("Infrequent treatment, prescriptions for muscle relaxants and Advil, and no continuous need for medication did not evidence an impairment that would likely produce such pain. Furthermore, Connard's statements regarding her ability to go shopping, take walks, perform household duties and travel on public transportation contradicted her complaints regarding the severity of her pain.").

Third, the Plaintiff faults the ALJ for his overreliance on the Plaintiff's daily activities as bases for finding that her testimony lacked credibility. Notwithstanding the fact that the Plaintiff's argument contradicts her claim that the ALJ solely looked at the objective evidence, the ALJ did not find that the Plaintiff had the residual capacity to perform light work "just because" she was able to "clean, wash clothes, and cook at times." ECF 11 at 19. In light of the objective evidence, and the other evidence discussed in the previous paragraph, nothing prohibited the ALJ from taking into account the Plaintiff's daily activities. *See Poupore*, 566 F.3d at 307 ("Further, the ALJ correctly noted that Poupore was able to care for his one-year-old child, including changing diapers, that he sometimes vacuumed and washed dishes, that he occasionally drove, and that he watched television, read, and used the computer.").

Therefore, the Court finds that the ALJ assigned the proper weight to the Plaintiff's testimony.

## III. CONCLUSION

For the reasons stated above, the Plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c) is denied in its entirety, and the Defendant's motion for judgment on the pleadings dismissing the Complaint is granted in its entirety.

The Clerk of the Court is respectfully directed to close this case.

It is **SO ORDERED**:

Dated: Central Islip, New York

May 1, 2019

                                                                                 /s/ Arthur D. Spatt

                                                                                 ARTHUR D. SPATT

                                                                            United States District Judge